Oh yes, oh yes, oh yes. The Honorable Custody Court of the 5th District, State of Illinois, is now in session. Please be seated. Good morning, counselors. First case on the docket, Bramble v. Edward Jones. Both sides ready? Mr. Matosian? Yes, Your Honor. Ready? Yes. Thank you. Thank you. May it please the Court, my name is Jane Matosian and I represent the defendants of Helens, Edward D. Jones & Company, and Joseph DelSignore. This case comes to you for de novo review of an order from the Circuit Court of St. Clair County denying the defendant's motion to compel arbitration. Now, plaintiffs have raised a number of issues before this Court in their briefs, but the dispositive issue simply stated is whether the trial court erred in denying the motion to compel arbitration. The decision of the trial court, as defendants stated in their brief, was incorrect, and I will articulate to you why it was incorrect. I'd like to tell you a little bit about the background of the case. Don and the late Carol Bramble were married. Carol purchased an IRA annuity, and Joseph DelSignore, one of the defendants, was the agent in conjunction with that purchase. In March 2004, Don and Carol signed an account agreement with Edward Jones, and again, Mr. DelSignore was the financial consultant employed by Edward Jones, who was assigned to service the account. And the agreement, the full agreement, is in the record. However, I have blown up a few select pages for you for your review, which I believe will be helpful in following along in terms of what the pertinent terms of the agreement are and the applicability here. In May 2006, the Brambles divorced, and when they divorced, unless their divorce decree said otherwise, it is very clear that under the Illinois Trusts and Dissolution of Marriages Act that Carol's designation of Don as the beneficiary of this annuity that he had purchased in 2004 was automatically revoked on entry of the divorce decree. Later that year, in December 2006, Carol died. In December 2008, this complaint was filed. Now, while Carol could have redesignated Don as his beneficiary, he did not, and his failure to do so legally demonstrates under the statute his intent not to review the designation. Those are really the basic facts and the merits of the case, and I think they're important in terms of understanding how we got here. But Don's claim here, and the merits, as the plaintiff states in their brief, is that Joseph DelSignore had an affirmative duty to call up Carol Bramble after they were divorced and say, I found out that you were divorced, and by the way, do you want to make sure you keep your ex-wife as the beneficiary of this annuity that you had bought, and if so, you need to fill out some paperwork to do so. Now, there's no such duty for a stockbroker to give this type of advice, and take it to its logical extreme, it would impose a duty which with no one could comply. For example, it would require an attorney to contact the client who had drawn up a will in case one of the beneficiaries got divorced or died to say to that client, by the way, you want to change your will. And it basically imposes a duty on a stockbroker to give advice and to keep in constant contact with their clients and basically to interfere with their affairs. The important points that I would like to show you about this agreement is, first of all, Don and Carol Bramble's signatures. There is no dispute in the record that these are the genuine signatures of Don and Carol Bramble. There is no dispute that the agreement contains a detailed arbitration provision starting on the bottom of this page and continuing on to the next. The arbitration provision has a header which is in capital letters, and the entire arbitration clause, which is about three paragraphs, is in bold print. In addition, I would like to point out to you that above the Bramble signatures, also in bold print, is a sentence which states that the Edward Jones Accountant Agreement and Disclosure Statement contains, on page 20, a binding arbitration provision which may be enforced by the parties. By my, slash, our signatures below, I, we, have received a copy of this document, which is in bold piece. So it's important, not once, above their signatures, are the parties told about the arbitration provision, but twice, in the body of the document itself, can they acknowledge receiving a copy of it. Nowhere in the record is it disputed that the Brambles did not receive a copy of the agreement and that this agreement did not contain the language that it does. So clearly the arbitration provisions are prominent and conspicuous. What is important about this agreement is that it does not contain a waiver of any rights, such as the waiver of a right to pursue a class action in arbitration. It does not contain a limitation of the damages the plaintiffs might be able to seek. It does not contain a limitation of substantive rights. And there is no dispute in this case that the claim falls within the scope of the agreement. So there's basically nothing exceptional about the agreement, such as I think what this court has addressed on many times and the Supreme Court has addressed many times is a limitation of rights, a waiver of warranties, etc. That is not in this agreement. However, what we have here that is exceptional is the trial court's rejection of the well-established body of law acknowledging and the Federal Arbitration Act's acknowledgement that these types of agreements are enforceable and favored and that disputes regarding their enforceability should be decided in favor of arbitration. Now, as a threshold matter, as I mentioned, the Federal Arbitration Act, it does apply to this case. That is not disputed. Two elements have to be established. There's a valid arbitration agreement and the dispute falls within the scope. There's no dispute as to the second element as to this dispute falling within the scope of this agreement. But the trial court, in applying state law principles, found in the negative as to the first element that there was no valid agreement to arbitrate because it was procedurally unconscionable. This conclusion, however, and the order you will see in the record is fairly vague, but it mentions three items, none of which supports the conclusion of procedural unconscionability. These three items are a purported fiduciary relationship, the case of Razor v. Hyundai, and the affidavit of John Bramble, which you also see there's a substantial amount of discussion in the briefs about this affidavit. What is important about these items that the trial court cited is none of them is assistance in establishing procedural unconscionability. As this court stated in Kinkle v. Singular Wireless, Best v. Direct TV, Kieff v. Allied Home Mortgage, and most recently in the Hollingshead v. A.G. Edwards case, where the term is difficult to read, procedural unconscionability is, where the terms are difficult to read, difficult to understand, such that the plaintiff is not aware that they're signing it. And that is simply not the situation here. What we do not see in the record are any of these factors, that it's not conspicuous. In fact, we see it is, that they didn't receive a copy, that they were not told where it was. It's very clear on the record that the plaintiffs were aware of that. The only evidence that the plaintiffs offered was Dawn's affidavit. That affidavit says absolutely nothing to support the allegation or the conclusion of procedural unconscionability. There are many elements why it does not. It doesn't say it's difficult to read or understand. Dawn doesn't say that. She doesn't say that the language was buried in fine print. It doesn't say she was tricked into signing it, it was shuffled in with some other papers, or that there was some duress. It doesn't say she didn't get a copy. It doesn't say that Mr. Delsignore refused to let them copy it, or have a copy, or to read it. But the two key points are, look at the affidavit carefully. It says nothing with regard to Carol Brando. This is Dawn's affidavit. Carol is deceased. Carol's estate is a claimant, is a plaintiff in this action. And this affidavit establishes nothing with regard to him. The only proof we have is that he signed this agreement. And the key issue is, the affidavit says absolutely nothing about this agreement whatsoever. The key words that the affidavit uses are paperwork. We have no idea what that paperwork is. It does not tie in or state that the paperwork that Dawn Bramble is talking about was the actual agreement that we have before us. Therefore, the affidavit fails to make it past the threshold and bring forth any useful factors in establishing procedural unconscionability. Now, let's assume, for the sake of argument, that this affidavit does reference this agreement. What does it say with regard to the factors of procedural unconscionability in terms of the factors that set forth in the Kinkle case? It says Dawn didn't read the agreement, and it says that Joe didn't read it to them. Plain and simple. But that doesn't establish procedural unconscionability. And, in fact, there is a very recent case from the First District called All-American Roofing v. Zurich. It's about 10 days old. It was issued August 20th. The court specifically held in that case that there is no affirmative duty on the part of a party to a contract to disclose the terms of the agreement to the other parties. A contracting party is not obligated to advise the other party of the contents of the agreement they are signing. In fact, there is authority to the contrary, citing the Belville National Bank v. Rose out of the Fifth District. That case also says that parties have an obligation to read their own agreements, and that's a basic tenet of contract law. You can choose not to read it, which is apparently what Dawn did when she was given a copy of it. But, as the court stated in the All-American Roofing case, short of appointing a conservator, there is generally little that courts can do to protect persons who are prone to signing contracts without reading them from the natural consequences of their folly. And, in essence, Dawn is saying, he didn't read it to me, I didn't read it. That simply does not establish procedural unconscionability. Excuse me, Ms. Montosian. The All-American Roofing case you said was how old? Ten days. So it's not in your brief. It is not. Could you give me a cite to it? I sure can. I've got a Lexis citation, 2010, Bill Act Lexis 871. Justice McBride. If the opposing counsel wishes to comment on it later on, if you're not aware of that, you can counsel. The other element, the factor that the trial court cited in his order was the case of Razor v. Hyundai Motors from the Illinois Supreme Court. Razor does not really have anything to do with the facts of this case. Razor was not even an agreement to arbitrate. But it involved a woman who had purchased an automobile. She signed the sales contract. The sales contract didn't have anything of note in it. But in the glove compartment was the warranty, which had a disclaimer of the warranty in it. And that was the problem that the court had, was that this disclaimer or limitation of liability on the part of Hyundai Motors was not given to her. She didn't even see it until after she drove away. So that really has no relevance to the particular issues here. This case is much more similar to the Fifth District cases of Bungie v. Williams, where farmers contracted to deliver soybeans. They were given forms to sign which said, hey, the back of this agreement contains additional terms, which is where the arbitration agreement was. And the court held that arbitration must be compelled, that the farmers had an obligation to read these contracts. And then in absence of fraud, proven by clear and convincing evidence, you can't avoid the contracts you sign by simply claiming you didn't read or understand them. Likewise, Bess v. DirecTV, the satellite television agreement, where the arbitration clause was provided to the plaintiff after she signed up for satellite television. But the agreement was upheld because the language was bold and conspicuous. Keefe v. Allied Home Mortgage from last year from this court, the arbitration clause in the rider to the loan application in bold print.  So I'm just separating these from the class action issues that pertain to those cases because we don't have that here. And likewise, Tortoriello v. Nissan, a Second District case, where an agreement was received afterwards, was in small print, but again, was found not to be procedurally unconscionable. The third element that the trial court cited was a purported fiduciary relationship. And the court does not say in what manner a fiduciary relationship comes into play in supporting this order. But this argument is based, the plaintiff's argument and the court's order appear to be based on a false premise that there is such a relationship. There's no such authority establishing that a stockbroker-customer relationship such as that we have here was fiduciary in nature. And I would point the court to the first American discount case v. Jacobs case from 2001, First District, that the duties that a stockbroker owes to a customer are exceedingly narrow to take orders, execute trades, and those duties do not rise to the level of requiring affirmative disclosure of the arbitration agreement. There are two cases that plaintiffs cite in support of their conclusion that there was such a relationship, Martin v. Heinhold, which was not an arbitration agreement it issued, but a duty to disclose a self-interest on the part of the commodity firm. And the other case was Gordon v. Bauer. That was a mortgage broker, excuse me, a real estate broker case. It had nothing to do with the stockbroker. The last argument the plaintiffs make is that Edward Jones failed to comply with a purported policy of AIG, the insurance company that issued the annuity, that Edward Jones supposedly had a duty to get Harold Ramble to update his beneficiary designation after he died and to essentially enforce AIG's policies. Now, that's an issue to the merits of the case. It has no bearing on this appeal. It is wholly unsupported by the record. But that issue, even though it is not before this panel, the plaintiffs will have an opportunity to fully present before an arbitration panel, so it's not foregone simply because it's not part of this appeal. The totality of the facts and the circumstances here lead to only one conclusion, and that there was a valid agreement to arbitrate. There is nothing on the record before you to show that the clause was difficult to read, find, or understand. And hopefully by seeing this, it's very clear that not once but twice do we see in very conspicuous bold print that the plaintiffs were made aware of this clause. In fact, had Dawn Ramble chosen to read the agreement, she would have been aware of it. And in fact, simply by looking at the language of her affidavit, and you assume that she's talking about this agreement, she acknowledges that she would have understood it because she said, well, had I read it, I would never have signed it. So clearly she can understand that language. And the only evidence, again, that we have as to Carol Ramble is that he signed the agreement, and there is no dispute as to the validity and the enforceability of the agreement as to him. Now, I assume that Mr. McGlynn will further discuss with you why the affidavit of Ms. Ramble meets the plaintiff's burdens of proof that the agreement is procedurally unconscionable. But he can't tell you two things. He can't point to you any evidence in the record as to how that affidavit or if there's any evidence as to Carol Ramble. He is a separate entity, a separate plaintiff. He also cannot tell you the connection between A and B. How do we get from the affidavit and talking about the paperwork to this agreement? Because the affidavit under the applicable Supreme Court rule has to be specific. It has to particularly address the issue at hand, and it does not. She could have stated this agreement. We were talking about this agreement. There is no evidence that it was, and she has to establish, it is her burden to establish that this particular agreement is unconscionable. And why can't we connect the dots? Because there are none. And because of this lack of connection, the affidavit is not useful in any fashion, and the entire argument fails. This Court's most recent pronouncement with respect to arbitration agreements was in the Hollingshead v. A.G. Edwards case last year. And the Court clearly said that where there is a valid agreement to arbitrate and the dispute falls within the scope, arbitration is mandatory, and the Court must compel it. And in Wiginton v. Dell, this Court stated that we have to resolve disputes as to procedural unconscionability in favor of the contract, in favor of arbitration, and that is why the trial court must be reversed. And as we cited in the All-American Roofing case just 10 days ago, the First District again reaffirmed there's no affirmative duty to disclose contract terms, but there is a duty on your part to read something you sign. The trial court's ruling and the plaintiff's arguments are based entirely on the false premise that there is an affirmative duty of oral disclosure. This is contrary to the law of this State and the Federal Arbitration Act, and that is why the trial court must be reversed. Thank you. Thank you. Good morning, Your Honors. Good morning. There were a lot of facts that were talked about, but none of the pertinent facts to what we're here to talk about. That was they didn't file an affidavit as to the facts that related to the transaction, the signing of the contract. They left it uncontested, so there's nothing before you except what Judge O'Malley had before him that compelled his conclusion. But they have no duty to file an affidavit, do they? Well, they do have a duty to contest facts when they're filed. And what happened in this particular case is that the only issue, although there were a lot of facts discussed, a lot of these facts that were discussed in the opening argument didn't have anything to do with what the issue is here, which is was there a sufficient showing made to the trial court to sustain its order denying a motion to compel? Now, the case law provides, as Hollis said, that if they bring forward a claim that the case must be arbitrated, then there becomes a question as to whether that arbitration clause is valid,  and when we allege procedural unconscionability, obviously the case law provides that procedural unconscionability consists of some impropriety during the process of forming the contract, depriving a party of a meaningful choice. What's your allegation as to the province, the unconscionability? Yeah, they had to provide facts that would rebut what Mrs. Bramble talked about in her affidavit as to what went on at the signing of the contract. Can you paraphrase that? How do you think that it's procedurally unconscionable? Well, it's procedurally unconscionable in that, as she describes it, she and her husband come in to sit down for this signing, and he just points to the 26 pages, two of the pages of the 26 pages of boilerplate, says, sign here and sign here, doesn't give them an opportunity to read it, doesn't give them an opportunity to review it, doesn't discuss it with them, and then he takes the papers away. There's no evidence in this record that he gave them a copy of this document. In fact, what she said was he gathered the papers after he signed them. He didn't show them to them, didn't explain exactly what they were. It was a 26-page boilerplate document. I haven't seen her affidavit. Did she say that she wasn't given enough time to read it? Yeah. What she says in her affidavit is that she and her husband met with Edward Jones' agent, Joe DelSignore, at Jones' office to sign the paperwork. Joe DelSignore did not read through the paperwork with us. DelSignore merely placed the papers in front of us and pointed to the signature lines. He had us sign the papers without reading them. He did not explain an arbitration provision. The signing of documents took seconds because all he did was place them in front of us, point to where we were to sign, then he gathered the papers. She's not claiming that she was not given the opportunity to read it. Well, she's claiming that she was not given the opportunity to read the papers and that he just pointed and said, this is where you sign. And so they signed. Even though she wanted the opportunity to read it. That's not the affidavit, sir. Well, what's crucial here is that the only thing that they say is factual is they provide no facts by way of an affidavit. Plaintiffs obviously had a reasonable opportunity to view the arbitration provision and understand its terms upon signing their agreement. No, they didn't. There's no evidence of that in the record. What is clear from all of the case law is that in the context of whether or not you're going to enforce an arbitration provision, if there is an affidavit that is filed, a counter-affidavit must be filed or the facts are deemed admitted. But your affidavit has to have some support in law to meet your burden. And I'm not sure that there is. Well, as far as procedural unconscionability, the support of the law, if we talk about, for example, the Kinkel case before the Supreme Court, what the court said was procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot barely be said to have been aware that he was agreeing to it. Surely, whatever the other context might be in which a contractual provision would be found to be procedurally unconscionable, the Supreme Court said that the label must apply to a situation such as the case at Bar where the plaintiff has testified that she never saw the clause. Nor is there any basis for concluding that the plaintiff could have seen the clause. In this situation, they were told to sign here and here, and the papers were withdrawn. Contrary to what was indicated, there is no record that they ever got a copy of this, nor was it explained to them. And so as the court has articulated with regard to counter-affidavits, in this context, if you do not provide an affidavit to contest facts that are alleged, they're deemed as true. So all you have before you in the narrow context of what happened, what were the procedural irregularities at the time of the signing, is that this is how it occurred. Now, it would not have been difficult for him to help you out or Judge O'Malley out by filing a document that said something to the effect that, I gave them plenty of opportunity to read it, that's not true, I didn't just have them sign it and take it away and keep the papers. That's all he would have had to do. If he would have done that, then there could have been an evidentiary hearing as to who was telling the truth, and then there would have been a further record established. But what they chose to do was to stay silent on the point. And if you look at the record in the case, Judge O'Malley gave them at least two opportunities to supplement the record, to file a contrary affidavit, and they chose not to. They could have filed a motion to reconsider, and they chose not to file the affidavit. What happened here was that this individual, uncontested facts are that he presented something, said sign here, they signed, never gave him a copy, and now he wants to take advantage of an arbitration provision in there, which was not conspicuous nor shown to him. Now, in the context of them displaying two or three of the pages of the 26-page boilerplate, it doesn't matter, as the Supreme Court said, if they didn't have an opportunity to even view the document. And they did not have an opportunity to view the document. Now, what has occurred through these cases, I think, are different public policy decisions. And one of them, I think, with Hollingshead is, look, provide us with appropriate amount of evidence so that we can make a reasoned decision. In the Hollingshead case, they said, this court indicated that since there wasn't an affidavit supporting these contentions, that you could not say that the process by which she signed these documents was procedurally unconscionable. And actually, in this situation, they did not do the trial judge any service in providing him with a basis other than to conclude that this was a truncated process where you put it in front of him and you pulled it back from him. And now, Judge O'Malley also talked about how it's not necessary to prove the case. There was a fiduciary relationship here as well. But with regard to the fiduciary relationship, with a broker and client, there is a fiduciary relationship and a duty and a minimum to disclose important details that are limiting or self-serving that the broker is proposing. In this context, what's happened is that people aren't buying a TV or a cell phone. They're entrusting their entire life savings to an individual. And in that case, there's a lot of trust, a lot of trust otherwise they wouldn't be sitting down. There was trust in the way that he handled the signing of the paperwork. But when – in these cases, as you analyze what the burdens are and who they should be placed on, it seems that the courts are making a distinction to some extent depending on the nature of the transaction. If the argument's over a $5 fee in a telephone, then the – and it's a consumer transaction. And they're saying, well, a $5 fine is too much. Isn't that more of a reason why your client should have read it? They're entrusting their life savings to the brokerage firm? Well, as the – I think that explains – As opposed to just giving $5? I think the duty would be on the broker to say, look, there are – we should reward him for basically – That wasn't my question. My question is shouldn't they have some responsibility to read the document? Well, I think that the Supreme Court has indicated that in the context of procedural unconscionability, if the circumstances are such that there was a depriving of a meaningful opportunity to review the documents, where he just said sign here and sign here, then procedural unconscionability is established. The – if Mr. DelSignore had filed something to say that it was otherwise, then you would have – Judge O'Malley would have had a basis for saying that the transaction was inviolable. I think that it shouts out the fact that he would not contest this. Does the sign here, sign here kind of command raise to the level of duress, or do you think it needs to? I don't think it needs to raise to the level of duress. I think that if – I think another factor is it didn't give them the document. I think what happened was they trusted the man. They had – they signed in two places, and he withdrew the documents. He was in a position to know I should explain these to them. Lawyers do that with some of the documents. You should explain them to them. You should go through the documents with them. You – he could have explained to them that there were limitations on what their rights would be. They don't have a right to a trial or an appellate court, but he chose not to do that. And I think what he was intending to do was to take advantage of the boilerplate document and not give them the opportunity to change their mind or to say, well, maybe we should talk to somebody about this. For example, if he said, well, there is arbitration provision in here which will deprive you of a right to a jury trial and a right to an appeal, they might have said, well, I'm not familiar. Maybe I should talk to a lawyer about this. The context that we have here is that – Do they have to say any more than there's an arbitration agreement, or do they have to explain what an arbitration agreement is? Well, I think we have to look at what the – in this specific case. Would it have been enough for them to say there's an arbitration agreement in the same period? I think that if there would have been some explanation as to what the limitation of rights, we would have a difference. But what you're essentially saying is you have to look at it in the context of the relationship. So because you contend there's this fiduciary relationship, that makes it different than getting a cell phone. I mean, you're not saying that a salesperson at Verizon has to explain the arbitration. But what happens, I think, is that there's a different analysis and different public policy considerations when you're talking about $5 and when you're talking about life savings. And I'll give you an example. But isn't that kind of going to the merits of the underlying case? Well, as far as the merits of the underlying case, that will be flushed out there. What we're talking about now is whether they had a meaningful opportunity to review the contract. And that's what I'm trying to figure out. The cases that you cite, there are none that really are these facts. Razor is entirely different in that there wasn't anything for her to look at. It wasn't that she chose not to. As far as Holland said, I think what happened there was the point was if you don't file a counteraffidavit, if you don't come forward with evidence, then don't complain to us about it. If you've met your initial burden, if the affidavit has risen to the level that there is. How difficult would it have been for them to file a responsive affidavit? I mean, if they could contest it, if it were true, why would they have to put all of us to the burden of speculation, which is what we're doing here? What we do know is what actually happened according to her affidavit. That, it's uncontested. Okay, now, why should we not put the burden on him, the broker, the man who has the contract that he should, to present evidence that this was done above board? That, to me, goes to the merits of the underlying case. It will get flushed out, as you said. Well, the issue before this Court is whether there was a sufficient basis for the trial court to conclude that the clause did not have to be adhered to because there wasn't an agreement between the parties that this matter would have to be arbitrated. And so the facts that are relevant to that are only what are the circumstances surrounding the trial, or excuse me, the signing of the contract. And the only circumstances that we know of surrounding the signing of the contract are those that she provided, which talked about what she and her husband went through. Now, as far as the difference in the public policy decisions, take, for example, there's a case up in the 1st District where it was a bunch of voters that gripped. And in that case, what happened was that there was an allegation that members of the Voting Association were being cheated, essentially, by the board of the Voters Association. There was some talk of contract kickbacks and whatnot. But there was a relationship there between board members and the board. And one of the things that the Court did say in that case that I think speaks of what I was talking about in terms of different public policy decisions attending to relationship cases as opposed to just a normal transistor $5 transaction is, they said that the Court should have allowed them to conduct discovery to investigate the issue of whether the Association Director's amended bylaws to include a mediation arbitration provision in bad faith to protect themselves. Now, in that situation, the idea was you don't hear that much when you're talking about a transistor radio or a cell phone, that they included it in bad faith to protect themselves. But in this context, there was a relationship between the members of the Association and the board members. And that relationship was one which seemed, as a matter of public policy, to indicate that you should see whether there was something just infused into this contract adhesion or in this case bylaws to protect themselves from suit and to mediate and arbitrate. And that's what happened here. Edward Jones folded into their agreement a mediation arbitration provision that was designed to protect themselves from suit. Now, that's a lot different from, for example, when the Supreme Court was talking about, I think, in the Kinkle case involving singular service where they said, well, some of these things, some of these agreements, it may be okay for the customer. If you insist that they have the limitations before the customer gets the product, then they might have to just recite it over the telephone. And that's not very practical. That's because there is a very distant relationship between singular and the customer. In this situation, that is in that Griffith case, there is a more significant relationship between a broker and a client. And in this context, there was a sit-down. And he did deprive them, and it's uncontested, of an opportunity to read it and to get a copy of it. Now, there is no indication in the record that he gave them a copy of this. On the contrary, he took it back. Okay. There is no indication in the record that he showed them an arbitration provision or gave them an opportunity to see the arbitration provision. There is nothing in the record to suggest that. This document she signed said she got a copy of it. Well? It says, I've received a copy of this document. The record indicates that he took the document back from her. And Joe DelSignore can say, hey, she got a copy of this. She says that I just took it back. No, I actually gave her a copy of this. That's very affidavit conflicts with this. Yeah. In fact, none of that, for example, I got a copy of this or whatever the other 26 boilerplate pages said, there was nothing in there that they got an opportunity to read. Do you all have time for rebuttal? No, you don't. You're making up new rules today. I'm glad it came to you. Now, counsel, do you want to rebut? Just a little. Briefly. One thing I neglected to do previously was point to the panel, the particular page in the record where the affidavit was. Thank you. I apologize. I've been looking for it. It's good. My associate, Mr. McBride, this is his first time appearing before this court. So I'd like to introduce Don McBride from my office. Welcome. And he has been very instrumental in drafting the briefs and so forth. So I wanted to call that to your attention, C64. It was a very interesting discussion by Mr. McGlynn with regard to this affidavit and what it does and doesn't say. And I addressed that in my previous argument. But the affidavit still does not give us anything to rebut this particular agreement. Is that different? C64, is that correct? That's not real helpful because they're not in order. What we need is an appendix number. Okay. We'll get it later. We don't have a C64. We have a C57 and a C75. Yeah, I don't know that it's in here. I haven't seen it. I know I read it some time ago. I apologize. I can't find it now. The key parts about this affidavit are, and there was a lot of discussion about, does it say that he didn't let them read it or does it say he didn't let them have a copy? We'll read it later on. That's okay. It doesn't say he withdrew the papers. It doesn't say that he didn't give them a copy. It says they met with him at his office to sign paperwork. He did not read through the paperwork with us. He merely placed the papers in front of us, pointed to the signature lines. He had us sign without reading, didn't explain that it had an arbitration provision. The signing took seconds because all he did was place them in front of us, point where we were to sign, then he gathered the papers. Gathered the papers doesn't mean he took them and withdrew them and left. He could have said that. Mr. McGlynn is telling you that he took them and left with them. The affidavit does not dispute the agreement where she stated that they received a copy of it and they signed that document. It simply says he gathered the papers up. He had a copy. They obviously had a copy. So it doesn't dispute that they did not receive the documents. But more importantly is that the whole argument about filing a counteraffidavit is hollow because the two cases that the plaintiffs cite with regard to this, Hollingshead and Kedzie v. Hodge, don't hold that once my clients, the defendants, have filed an affidavit, which we did verifying the agreement. The burden shifts to the plaintiffs to file their counteraffidavit. That's what this court was talking about in Hollingshead. The plaintiff in that case had not filed an affidavit in response to the motion to compel arbitration, and the court sent it back. But the counteraffidavit is filed by the party opposing the motion. The burden then doesn't switch back for the moving party to file a counter-counteraffidavit, which is in reality what Mr. McGlynn is talking about. And there is no need for us to file any type of a response because the affidavit in and of itself doesn't meet its burden. The other important point about those cases is that they don't say that you have to respond to the plaintiff's affidavit with a counteraffidavit. You can respond with some other matter, and we submitted written pleadings to the court pointing these issues out to him and the applicable case law and what the agreement says. So simply put, there was nothing further to rebut but in terms of submitting additional testimony or an affidavit, but we did submit additional materials to the court. Now, another thing that the affidavit does not say is that the plaintiffs were not given an opportunity to read the agreement, but they asked that they weren't told. Again, that's simply not in the agreement. A few additional points that Mr. McGlynn had pointed out, which was that it is uncontested that Mr. DelSignore should sign here and he never gave them a copy. The affidavit does not say he did not give us a copy. With regard to the additional element of the fiduciary relationship and at a minimum a duty to disclose limiting or self-serving information, this is really contrary to the FAA and Illinois law, and this is very key, is that arbitration is not self-serving, such that you would have to disclose it. Plus, arbitration clauses are to be submitted and considered under general contract principles. They're not held to a higher standard. Thank you, ma'am.